NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ATOO HEERA SAKHRANI, | : | |
| | : | Civil Action No. 05-cv-4746 (PGS) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| GERALD C. ESCALA, in his private capacity; | : | |
| RICHARD P. HABER, ESQ.; LEONARD B | : | |
| ZUCKER; MICHAEL S. ACKERMAN; JOEL | : | |
| ACKERMAN; FRANCES GAMBARDELLA; | : | OPINION |
| ZUCKER, GOLDBERG & ACKERMAN; | : | |
| ALISON L. GABER, ESQ.; DAVID C. | : | |
| ROBERTS, ESQ.; JOSEPH V. SORDILLO, | : | |
| ESQ.; DAVID P. WADYKA, ESQ.; ALL | : | |
| RELATED INSURORS: and ALL UNNAMED | : | |
| JOHN DOES 1-10 and JANES DOES 1-10. | : | |
| | : | |
| Defendants. | : | |

**SHERIDAN, U.S.D.J.**

This motion comes before the Court on several motions to dismiss for failure to state a claim upon which relief may be granted.

I.

Since 2002, plaintiff, Atoo Heera Sakhrani, has filed complaints or counterclaims in 15 lawsuits[1] including this one which arise out of foreclosure actions involving two or three residential properties owned by plaintiffs. The other 15 lawsuits are:

---

[1] There appears to be at least 4 or 5 other lawsuits filed, but this Court has been unable to confirm same. In addition, for some peculiar reason, plaintiff rarely appeals a decision. Instead, he simply refiles the same case.

1. *First National Bank v. Majestic Home Mortgage, LLC. et al.*, United States District Court, D.N.J., Docket No. 02-2935;

2. *Deutsche Bank v. Sakhrani v. Ameriquest*, Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-18721-03;

3. *Sakhrani v. Ameriquest*, Superior Court of New Jersey, Special Civil Part, Bergen County, Docket No. DC-6443-03;

4. *Sakhrani v. P.N.C. Bank*, United States District Court, D.N.J., Docket No. 03-5558;

5. *Sakhrani v. Ameriquest, et al.*, United States District Court, D.N.J., Docket No. 03-5570;

6. *Sakhrani v. Washington Mutual, et al.*, United States District Court, D.N.J., Docket No. 03-5571;

7. *Sakhrani v. Majestic Home Mortgage, LLC, et al.*, Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-86-05;

8. *Sakhrani v. Majestic Home Mortgage, LLC, et al.*, Superior Court of New Jersey, Bergen County, Docket No. F-18867-03;

9. *Sakhrani v. First National Bank, et al.*; United States District Court, D.N.J., Docket No. 03-6042;

10. *Washington Mutual v. Sakhrani*, United States District Court, D.N.J., Docket No. 03-6189;

11. *Sakhrani v. Ameriquest, et al.*, Superior Court of New Jersey, Chancery Division - Equity, Bergen County, Docket No. C-87-05;

12. *In the matter of Ahoo Heera Sakhrani*, United States Bankruptcy Court, D.N.J., Docket No. 05-34286;

13. *Sakhrani v. Koenig, et al.*, United States District Court, D.N.J., Docket No. 05-1192

14. *Sakhrani v. Judge Gerald C. Escala,* Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-00530-05*;*

15. *Sakhrani v. Washington Mutual, et al.*, United States District Court, D.N.J., Docket No. 06-1760.

Interestingly enough, plaintiff does not deny that he defaulted on the underlying mortgage notes; but has interposed questionable, if not frivolous, legal theories and defenses to stall foreclosure proceedings. This matter is no exception. Paragraphs 1 - 37 of the Complaint concern an issue which arises out of the bankruptcy matter. Paragraphs 38-105 concern claims previously addressed by various courts.

II.

In a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, defendants bear a high burden of proof. In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). The court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.*

A complaint may be dismissed as frivolous if it "lacks an arguable basis either in law or in fact." *Bey v. Garcia*, Slip Copy, 2006 WL 1207980, *3 (D.N.J. 2006) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former §1915(d)); *Carroway v. New Jersey*, Slip Copy, 2006 WL 1373153, *2 (D.N.J. 2006). The standard for evaluating whether a complaint is "frivolous" is an objective one. *Id.* (See also, *Deutsch v. United States*, 67 F.3d 1080, 1086-7 (3d Cir. 1995).

A *pro se* complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." *Haines*, 404 U.S. at 521 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d. Cir 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002)(dismissal pursuant to 28 U.S.C. § 1915(e)(2)); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 453 (3d Cir. 1996)).

Giving Sakhrani all fair inferences and accepting all the "facts" proferred as true, Plaintiff fails to state a claim upon which relief can be granted for the following reasons.

III.

In the bankruptcy matter (paragraphs 1-37 of Complaint), Sakhrani sues a Judge of the Superior Court of New Jersey along with the lawyers who appeared in some of the different cases. Factually, Sakhrani alleges defendants conspired to breach his civil rights by violating the automatic stay proceedings of the U.S. Bankruptcy Code, 11 U.S.C. §362. The facts are not in dispute.

On July 22, 2005, Judge Gerald Escala heard 13 motions in 4 of the 16 actions regarding Sakhrani's real estate holdings. On that date, among other things, Judge Escala verbally ordered payment of legal fees to the firms of Zucker, Goldberg & Ackerman, LLC (Zucker firm), Norris, McLaughlin & Marcus, P.A. (Norris firm) and DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, P.C. (DiFrancesco firm) (collectively referred to as the Law Firms) under the New Jersey Frivolous Claims Act.

4

On July 28, 2005, Sakhrani petitioned the U.S. Bankruptcy Court for relief.

On August 15, 2005, the Petition was dismissed.

On August 23, 2005 the Petition was reinstated.

On August 24, 2005, Judge Escala executed an Order memorializing his decisions of July 22, 2005.

In late August, 2005, Zucker, Norris and DiFrancesco firms respectively served a copy of the applicable orders on plaintiffs.

On September 30, 2005, plaintiff filed this action. In December, 2005, plaintiff amended his complaint alleging the actions of Escala and the law firms were illegal because they occurred after the reinstatement of the Bankruptcy action, and accordingly prohibited by the automatic stay provision. In plaintiff's view, these facts give rise to claims for discrimination against an Asian American, a violation of civil rights, conspiracy to violate plaintiff's civil rights, a theory regarding collateral estoppel and res adjudicata (which baffles this court) and imposition of a constructive trust on his properties.

The claim against Judge Escala for entering an order memorializing the pre-bankruptcy ruling, and service of the Order subsequent to reinstatement of the bankruptcy proceeding by the Law Firms lacks merit. The courts have long established that simple and ministerial acts in litigation that occur post filing do not constitute a continuation of the judicial proceeding in violation of the automatic stay provision of 11 U.S.C. §322(a)(1). *See*, *Rexnod Holdings v. Bidermann*, 21 F.3d 522, 527 (2nd Cir. 1994); *Savers Fed. Sav. & Loan Assoc. v. McCarthy Contr. Co. (In re Knightsbridge Dev. Co.)*, 884 F.2d 145, 148 (4th Cir. 1989); *Teachers Ins. & Annuity Ass'n v. Butler*, 58 B.R. 1019, 1022 (S.D.N.Y.). In addition, certain post filing actions are permissible where the

proceeding technically violates the stay but where the interests of equity and judicial economy dictate otherwise. *In re Siciliano*, 13 F.3d 748, 750-51 (3d Cir. 1994) (wherein the Court may validate a judicial proceeding in violation of the stay provision under 11 U.S.C. §362(d)[2]; *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F.Supp. 342, 353 (D.N.J. 1996).

In this case, the entry of the Order memorializes a pre-filing decision and the service of that Order by the Law Firms are ministerial rather than substantive in nature, and therefore not in violation of the automatic stay provision. Contrary to plaintiff's position, it was prudent to memorialize the Order and service thereof so that Sakhrani could have resolved these newly incurred debts (i.e. fees owed Law Firms imposed by Judge Escala) in the course of the bankruptcy action. Accordingly, the Order of Judge Escala, and the service by the Law Firms does not give rise to a cause of action.

Despite plaintiff's grandiose theories for recovery, the Bankruptcy Code limits the remedy for violations of the automatic stay provision. The code states in part:

> an individual injured by a <u>willful</u> violation of a stay provided by this action shall recover actual damages including costs and attorney's fees, and in appropriate circumstances, may recover punitive damages. 11 U.S.C. §362(k)(1). (emphasis added)

In this case, there is no showing of willfulness by either Judge Escala or the law firms. In fact, in his supporting affidavit, Judge Escala entered the Order after he received notice of the dismissal of the initial petitioner, but prior to learning that the matter was reinstated.[3] The lawyers merely served

---

[2] The claims of Sakhrani should have been raised in the bankruptcy matter as opposed to this case; but none of the defendants argue same.

[3] Plaintiff argues that Judge Escala and the attorneys had an obligation to review the PACER system daily to ascertain whether the bankruptcy proceeding was reinstated. To the contrary, the

6

the Order in compliance with the terms of said Order.  Under those circumstances, no intentional or deliberate violation could be educed by any reasonable fact finder.  *Matter of Mullarkey*, 81 B.R. 280, 284 (Bankr. D.N.J. 1987); *Tel-A-Communications Consultants, Inc. v. Auto-Use*, 50 B.R.250, 255 (Bankr. D.Conn. 1985).

IV.

In the remaining paragraphs of the Complaint (38-105), there are other facts pled which have been previously litigated and dismissed by both the New Jersey Superior Court and the Federal District Court.

For example, several weeks ago this Court dismissed claims by plaintiff against certain mortgage lenders based on the entire controversy doctrine.  See *Sakhrani v. Washington Mutual Bank*, slip copy, 2006 WL 2040256 (D.N.J. 2006) (attached). In this claim, plaintiff rehashes the same claim but asserts it against the lawyers rather than the lenders.  In the previously decided case, he based his federal claim on an error of one attorney who filed a foreclosure action but named the wrong mortgage holder. When the error came to light, it was promptly corrected by the Bankruptcy Court.  In paragraphs 38-105, plaintiff claims various improprieties based upon the bankruptcy proceeding, or the state foreclosure actions.  But, as in the prior cases, all these parties have been previously sued by Sakhrani on similar facts.  For example, Judge Escala was sued in a case listed as number fifteen on page two of this opinion.  In addition, the DiFrancesco firm, the Zucker and the Norris firm were all sued in the case listed as number seven.  For the reasons expressed in the previous opinion of the Court (attached), the claims asserted in paragraphs 38-105 are dismissed.

---

Court recognizes that the practice is that notice must be given by the trustee or Bankruptcy Court which had not occurred at the time of the entry of the Order.

V.

Judge Escala also asserts that the defense of judicial immunity bars this action against him. Although the Court need not decide this, the doctrine is applicable here, and bars the Complaint in its entirety.

It is a well-established principle that judges are absolutely immune from suits for damages when they act in a judicial capacity. *Bey*, Slip Copy, 2006 WL 1207980, at *5. Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction. *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 553-53 (1967). Judicial immunity allows the courts to protect the finality of judgments, discourage inappropriate collateral attacks, and ensure judicial independence by insulating judges from actions initiated by disgruntled litigants. *Id.* (citing *Forrester v. White*, 484 U.S. 219 (1988)).

Judicial Immunity can be overcome only for actions not taken in a judicial capacity. *Carroway*, Slip Copy, 2006 WL 1373153 at *4. In order to determine whether judicial immunity attaches, the court must engage in a two-part inquiry. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768-70 (3d Cir. 2000). First the court must determine whether the judge was partaking in an activity normally performed by a judge. *Bey*, 2006 WL 1207980 at *6. Additionally, the Court must ensure that the judge had jurisdiction to undertake that activity. *Id.* at *7. The true test in determining whether or not jurisdiction existed for judicial immunity purposes is the "clear absence of all jurisdiction." *Id.* That is to say, even if a judge is acting in excess of his or her jurisdiction, judicial immunity still attaches, unless there is a clear absence of all jurisdiction. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

Here, Sakhrani is claiming that Escala lacked jurisdiction to enter the orders awarding attorneys fees.  Although Sakhrani colors Judge Escala's orders as a "willful abdication of his judicial responsibilities" and as running "roughshod" over Plaintiff's civil rights, the long and short of it is that Plaintiff is merely expressing dissatisfaction with judicial rulings that he does not like.  Moreover, these are rulings well within the jurisdiction of Judge Escala as a Presiding Judge in the Superior Court of New Jersey, Chancery Division.  The requirement that this Court dismiss these claims based on Judge Escala's absolute immunity is evident.

Based on the foregoing, it is unnecessary to address Defendant Escala's claim to qualified immunity as it relates to Plaintiff's claims under 42 U.S.C. § 1983.

VI.

The Law Firms contend that the principle of litigation immunity bars the suit.  As with judicial immunity, the court need not decide the issue, but it does apply, and it bars this lawsuit. The litigation privilege has long been embedded in New Jersey's jurisprudence.  The absolute immunity doctrine is a firmly established principle which is "indispensable to the due administration of justice," because lawyers and litigants must "be permitted to speak and write freely without the restraint of fear of an ensuing action. *Loigman v. Twp. Comm. Of the Twp. of Middletown*, 185 N.J. 566, 580, 889 A.2d 426, 434, (N.J. 2006)  *Fenning v. S.G. Holding Corp.*, 46 N.J. Super. 100, 117, 135 A.2d 346 (App.Div. 1957). Given the importance to our justice system of ensuring truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that the litigation privilege has been referred to as "the backbone to an effective and smoothly operating judicial system." *Hawkins v. Harris*, 141 N.J. 207, 661 A.2d 284,

292 (N.J. 1995) (quoting *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal.App.3d 961, 970 (Ct.App. 1987)).

Although the Third Circuit has not adopted New Jersey's absolute litigation privilege, Courts in this District have applied the privilege in several cases; some based on state law and others based on federal law. *See, Waterloov Gutter Protection Systems Co. v. Absolute Gutter Protection, LLC*, 64 F.Supp.2d 398 (D.N.J. 1999); *Thomason v. Lehrer*, 182 F.R.D. 121 (D.N.J. 1998); *see also, Thomas v. Ford Motor Co.*, 137 F.Supp.2d 575 (D.N.J. 2001).

Originally the Privilege was limited to defamation cases, but has been expanded to encompass both common-law and statutory causes of action. *Waterloov*, 64 F.Supp.2d at 415. The protection of the litigation privilege has extended to any communication satisfying the following four requirements: (1) made in judicial or quasi-judicial proceedings; 2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the law. *Id.* The litigation privilege generally protects an attorney from civil liability arising from words he has uttered in the course of the judicial process. *Loigman*, 889 A.2d at 433.

"The litigation privilege is essential for the proper functioning of our criminal and civil justice systems." *Loigman*, 889 A.2d at 435. Recognizing the common-law litigation privilege, the United States Supreme Court expressed that "private attorneys were treated no differently than judges, government lawyers, and witnesses." *Briscoe v. LaHue*, 460 U.S. 324, 334-35 (1983). "All persons - governmental or otherwise - who were integral parts of the judicial process" were accorded absolute immunity from civil liability because of the need 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.' *Id.* at 335

(quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978)).  In New Jersey, the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims. *Loigman*, at 436 (citing *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 117 A.2d 889 (1955)).

In deciding *Waterloov,* 64 F. Supp. at 415, Judge Orlofsky addressed the novel issue of the applicability of the state-law litigation privilege in a federal question case. *Waterloov*, 64 F.Supp. at 401.  Recognizing that a great deal of confusion surrounds the application of state-law privileges in cases arising under a District Court's federal question jurisdiction, Judge Orlofsky opined that "[b]ecause the application of New Jersey's "absolute litigation privilege" in [that] case does not conflict with a federal interest or undermine a federal right and given New Jersey's strong policy interest in the privilege" the litigation privilege was **not** preempted under the circumstances of that case.  *Id.* at 412, 401.

Judge Orlofsky distinguished federal cases that have chosen not to apply a state-law privilege. *Id.* at 412.  The District Judge determined that in many cases, state privilege was not extended to federal claims because: (1) there is a competing federal privilege; (2) the evidence for which the privilege is asserted is relevant in both state and federal claims; and (3) there is a danger that its application would undermine a federal cause of action or interest.  *Id.*  Here, however, like in *Waterloov*, there is no competing "federal litigation privilege."  Nor will the application of the litigation privilege undermine a federal cause of action or interest.  *Id.*  As a matter of fact, this action, along with Sakhrani's 15 other lawsuits are steeped in state law.  Regardless of how Sakhrani attempts to cloak this action under the guise of federal constitutional law, he simply reiterates his state law claims which have been litigated repeatedly for years.  In the end, the application of New

11

Jersey's absolute litigation privilege to the facts of this case makes sense. *Waterloov*, 64 F.Supp. at 14.

VII.

This court is concerned that Mr. Sakhrani will continue to file frivolous and vexatious litigation. Accordingly, the Court is requiring Sakhranni to show cause why an Order imposing sanctions and or restricting further access to the federal courts should not be entered. The court is mindful that Third Circuit has long recognized that a pre-filing injunction is an extreme remedy which must be "narrowly tailored and sparingly used." *Gonzalez v. Feiner*, 131 Fed. Appx. 373, 378 (3d Cir. 2005) (citing *Abdul-Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir. 1990) (quoting *In re Packer Ave. Associates*, 884 F.2d 745, 747 (3d Cir. 1989)). Sufficient notice and opportunity to be heard are essential prerequisites to the entry of a pre-filing injunction. *See In re Oliver*, 682 F.2d 443, 445-446 (3d Cir. 1982).

In a 1995 decision, District Judge Wolin recognized that in response to the fact that a *pro se* plaintiff had abused his privilege by refiling the same lawsuit three times mandated a response and ruling from the Court. He opined "the cost in time and personnel to process *pro se* and *in forma pauperis* pleadings requires some portion of the court's limited resources and ties up these limited resources to the detriment of other litigants." *Watson v. Englewood Police Dept.*, 1995 WL 16780, *2 (D.N.J. 1995) (quoting *Abdul-Akbar*, 901 F.2d at 332)). Judge Wolin recognized that the Third Circuit law suggested that the District Court should bar plaintiff from filing any civil action without prior leave of the Court. *Id.* In seeking leave of court, plaintiff must certify: (1) that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal courts; (2) that he believes the facts alleged in his complaint to be true, and (3) he knows of no

reason to believe his claims are foreclosed by controlling law.  *Gonzalez*, 131 Fed. Appx. At 378 (quoting *Abdul-Akbar*, 901 F.2d at 333).

The parties should be prepared to discuss potential remedies including an injunction and sanctions, if any, at the hearing.


August 16, 2006                                            S/ *Peter G. Sheridan*
                                                                      PETER G. SHERIDAN, U.S.D.J.